IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RODNEY VENEZIE, Individually, and on behalf of others similarly situated, <br>     Plaintiff, <br><br> vs <br><br> MBNA AMERICA BANK, <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 05-1458 <br> ) <br> ) <br> ) |

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion to compel arbitration and stay proceedings pending the completion of arbitration (Docket No. 12) be granted, and that the case be administratively closed without prejudice to any parties' rights to reopen it.

II. Report:

Presently before the Court is a motion to compel arbitration and stay proceedings submitted by the defendant, MBNA Bank America ("MBNA").

The plaintiff, Rodney Venezie, has filed a purported class action complaint, alleging that MBNA violated the Truth In Lending Act, 15 U.S.C. § 1602, et seq. ("TILA"), by changing the terms of his credit agreement without notice. According to the complaint, the plaintiff and MBNA entered into a credit agreement approximately eight years ago, whereby MBNA provided him with a credit card and opened a credit plan for him with a fixed periodic interest rate. The plaintiff contends that as of September 9, 2004, MBNA charged him a daily fixed interest rate of .027369%, which resulted in a corresponding annual percentage rate

("APR") of 9.99%; that in billing statements received over the course of the next several months, MBNA increased his APR, even though he never received notification that the terms of their credit agreement had changed; and that in billing statements received between January 8, 2005 through May 8, 2005, MBNA increased his APR from 12.99% to 20.49%, and all the while, he never received notification from MBNA that it was changing the terms of their credit agreement.

The plaintiff commenced this action on behalf of himself and a purported class of individuals "who were subjected to increased finance charges on their credit accounts, without first receiving the required timely disclosure by MBNA that it would be changing the terms of their original credit agreement." (Complaint at ¶ 19). The plaintiff seeks monetary and injunctive relief, and he invokes the Court's jurisdiction pursuant to 28 U.S.C. § 1332.[1]

In response to the complaint, MBNA moved to compel arbitration and stay proceedings pending the completion of arbitration. In support of its motion, MBNA submitted the declaration of Margaret Simpkins, a Vice President at MBNA. Ms. Simpkins avers in her declaration that the plaintiff and his wife, Lori Venezie, opened a credit card account with MBNA on April 13, 1998, which is governed by a Credit Card Agreement (hereinafter, the "Agreement"); that on December 20, 1999, MBNA mailed to the Venezies and other MBNA credit cardholders written notification that MBNA was amending the Agreement to add an arbitration provision which required disputes arising from the Agreement to be arbitrated (the "Notice"); that the Notice provided cardholders with the opportunity to opt out of arbitration by providing written notice to MBNA by January 25, 2000; that to track the identity of cardholders

---

1.  The plaintiff is a resident of Pennsylvania, residing at 420 Hansen Avenue, Ellwood City, PA 16117.  MBNA is a national banking association with its principal place of business in Wilmington, Delaware; and the amount in controversy is said to exceed the statutory limit.

who opted out of arbitration, MBNA created an electronic spreadsheet of their account numbers and noted in their customer files of their decision to "opt out" of arbitration; and that MBNA's records indicate that the plaintiff did not opt out of the Agreement's arbitration provision.[2]

The parties' Agreement "is governed by the laws of the State of Delaware".[3] The Agreement contains an "Amendments" clause which provides in relevant part: "We may amend this Agreement by complying with the applicable notification requirements of federal law and the laws of the State of Delaware." Pursuant to this clause, on December 20, 1999, MBNA mailed the Venezies the aforesaid Notice which apprised them of amendments to their Agreement, including the arbitration provision.[4] The Notice explained:

> As provided in your Credit Card Agreement and under Delaware law, we are amending the Credit Card Agreement to include an Arbitration Section. Please read it carefully because it will affect your right to go to court, including any right you may have to have a jury trial. Instead, you (and we) will have to arbitrate claims. You may choose not to be subject to this Arbitration Section by following the instructions at the end of this notice. This Arbitration Section will become effective on February 1, 2000...[5]

The instructions at the end of the Notice provided:

> *If you do not wish your account to be subject to this Arbitration Section, you must write to us at MBNA America, P.O. Box 15565, Wilmington, DE 19850... You must give notice in writing; it is not sufficient to telephone us...* **We must receive your letter at the**

---

2.  See, declaration of Margaret Simpkins (attached to the defendant's brief in support of its present motion) at ¶¶ 3-5, 7-8.

3.  A copy of the Agreement is attached as Exhibit 1 to the declaration of Margaret Simpkins.

4.  See, declaration of Margaret Simpkins at ¶ 4.

5.  A copy of the Notice is attached as Exhibit 2 to the declaration of Margaret Simpkins.

> ***above address by January 25, 2000 or your rejection of the Arbitration Section will not be effective.*** (Emphasis in original).

In her declaration, Margaret Simpkins avers that the Notice mailed to the Venezies was not returned to MBNA as undeliverable.[6] Simpkins also declares that the plaintiff's customer information file currently lists his address as: 420 Hansen Avenue, Ellwood City, PA 16117 (which is the address the plaintiff lists for himself in the complaint), and that in the past, MBNA sent account statements to the Venezies at this address, and the mailings were not returned to MBNA as undeliverable.[7] As recited above, the Venezies' customer information file contains no notation that the plaintiff opted out of the arbitration clause, and the plaintiff's account number is not listed in MBNA's "opt out of arbitration" file.[8]

The arbitration provision contained in the Notice provides in pertinent part:

> **Arbitration:** Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement of your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration. The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the claim is filed...

The Notice also provides: "This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C.

---

6. See, declaration of Margaret Simpkins at ¶ 12.

7. Id. at ¶ 9.

8. Id. at ¶ 8.

§§ 1-16... No claim submitted to arbitration is heard by a jury and no Claim may be brought as a class action... [T]his Arbitration Section applies to all Claims now in existence or that may arise in the future".

The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), provides in relevant part that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The aforesaid arbitration provision falls within the scope of the FAA, because the matter at issue involves "commerce" as that term is defined in the FAA. In part, "commerce" is defined in the FAA as "commerce among the several States or with foreign nations, or in any Territory of the United States..." 9 U.S.C. § 1. It is not disputed that the parties' controversy involves interstate commerce.

The Third Circuit Court of Appeals has explained: "If... a court deems a controverted arbitration clause a valid and enforceable agreement, it must refer questions regarding the enforceability of the terms of the underlying contract to an arbitrator". Harris v. Green Tree Financial Corp., 183 F.3d 173, 179-80 (3d Cir. 1999). "In conducting this inquiry the district court decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." Great Western Mort. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997).

"The FAA makes agreements to arbitrate enforceable to the same extent as other contracts." Harris, supra, 183 F.3d at 178. Thus, "federal law presumptively favors the enforcement of arbitration agreements". Id. Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration..." Moses H. Cone Memorial Hospital

v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983).  An arbitration provision should be interpreted to cover the dispute unless it can be stated with "positive assurance" that the dispute was not meant to be arbitrated.  Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39, 44 (3d Cir. 1978).

Here, the aforesaid arbitration provision amending the Agreement mandates that the parties submit their claims to arbitration.  Nonetheless, the plaintiff contends that the arbitration provision cannot be enforced against him, because he never agreed to arbitration. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally apply state law principles that govern the formation of contracts."  First Options of Chicago v. Kaplan, 514 U.S. 938, 944 (1995).

As mentioned above, the parties' Agreement contains a choice of law provision, which specifies it is governed by Delaware law.  In cases as here, where jurisdiction is based upon diversity, a federal court sitting in Pennsylvania should apply the choice of law rules of the forum state.  Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994).   Under the law of Pennsylvania, "courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."  Id.

In Kruvits, the Court stated:

Pennsylvania courts have adopted section 187 of the Restatement, Second, Conflict of laws which provides that:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

6

>    (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>    (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
>    (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue...

Id.

Here, the plaintiff's claim alleging a violation TILA cannot be resolved by the parties' Agreement; thus, we look to § 187(2) of the Restatement, Second, of Conflicts set forth above. Pursuant to § 187(2), it appears that the choice of law provision in the Agreement should be upheld, since Delaware has a substantial relationship to the parties. That is because MBNA is a national banking association with its principal place of business in Wilmington, Delaware (declaration of Margaret Simpkins at ¶ 2; complaint at ¶ 5).

In Kruvitz, our Court of Appeals stated: "Pennsylvania courts will only ignore a contractual choice of law provision if that provision conflicts with strong public policy interests." 40 F.3d at 56. In arguing against use of the Delaware choice of law provision in the Agreement, the plaintiff argues that Delaware law conflicts with Pennsylvania's "fundamental policy of protecting its citizens in their capacity as consumers", as exemplified in Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.[9] However, Delaware law

---

9. See, plaintiff's response in opposition to the defendant's current motion at p. 3.

is not contrary to Pennsylvania public policy in this regard, as Delaware also has an interest in protecting its citizens in their capacity as consumers. See, 6 Del. C. § 2513. Thus, in accordance with the parties' choice-of-law provision, the Agreement will be construed under Delaware law.

Delaware statutory law authorizes amendments to credit card agreements as occurred here. In pertinent part, 5 Del. C. § 952(a) provides:

> Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect, whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties. Without limiting the foregoing, such amendment may change terms by the addition of new terms or by the deletion or modification of existing terms, whether relating to ... the rate or rates of periodic interest, the manner of calculating periodic interest or outstanding unpaid indebtedness ... arbitration or other alternative dispute resolution mechanisms, or other matters of any kind whatsoever...

Under Delaware law, banks such as MBNA may unilaterally amend credit card agreements if, as here, they provide notice to credit cardholders of the proposed amendment, as well as an opportunity to opt out of the amendment by sending notice to the bank rejecting it. See, Edelist v. MBNA America Bank, 790 A.2d 1249, 1257-58 (Del. Super. 2001), citing 5 Del. C. § 952(b)(1)-(2). Accord, Pick v. Discover Financial Services, Inc., 2001 WL 1180278, * 4 (D.Del., Sept. 28, 2001).

Indeed, the District Court for the District of Delaware has enforced similar arbitration clauses as here, which are added to credit card agreements pursuant to "change in terms" or "amendment" provisions. See, Lloyd v. MBNA America Bank, 2001 WL 194300 (D.Del., Feb. 22, 2001), aff'd., 27 Fed.Appx. 82, 2002 WL 21932 (3d Cir., Jan. 7, 2002); and

Sagal v. First USA Bank, 69 F.Supp.2d 627 (D.Del. 1999), aff'd., 254 F.3d 1078 (3d Cir. 2001). Based on Margaret Simpkins' uncontroverted declaration, MBNA followed the statutory scheme for properly amending the Agreement, and it appears the plaintiff was sent and received the Notice of arbitration, but failed to opt out of it.  See, Edelist, supra, 790 A.2d at 1258 (rejecting the plaintiff's claim that he did not receive notice of arbitration, where MBNA's affidavit stated that notice of arbitration was mailed to plaintiff and not returned, and the plaintiff failed to exercise the opt-out provision).

Thus, in accordance with the aforesaid case law and statutory law, we find that the arbitration clause at issue here is valid and enforceable.  As such, the parties' dispute should be submitted to arbitration.  See, Harris, supra, 183 F.3d at 179-80 (stating that if an arbitration clause is deemed a valid and enforceable agreement, a court "must refer questions regarding the enforceability of the terms of the underlying contract to an arbitrator").

The FAA provides that on application of one of the parties, a court shall stay its proceedings "upon being satisfied that the issue (before it) is referable to arbitration under such (arbitration) agreement."  9 U.S.C. § 3.  Under this section of the FAA, when a party requests a stay of proceedings as part of a motion to compel arbitration, as here, a District Court is obligated to grant the stay if it decides to compel arbitration.  See, Lloyd v. Hovensa, LLC, 369 F.3d 263, 269 (3d Cir. 2004).  As explained in Lloyd, the effect of such a stay is twofold: "it relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to arbitration without the delay that would be occasioned by an appeal of the District Court's order to arbitrate." Id. at 270.

Therefore, it is recommended that the defendant's motion to compel arbitration

and stay proceedings pending the completion of arbitration be granted, and that the case be administratively closed without prejudice to any parties' rights to reopen it.

Within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ ROBERT C. MITCHELL
United States Magistrate Judge

Dated: February 22, 2006